JAMES MORTON, Appellant, *v.* HORACE K. THURBER et al., Respondents.

Same Appellant *v.* Same Respondents.

To constitute usury it must be shown that the additional interest was paid or retained in pursuance of a mutual agreement.

Where an agreement was made to loan money at lawful interest, but at the time of executing the securities the lender required and the borrower assented to the allowance of a sum falsely represented by the former to have been an expense incurred in procuring the money, *held*, that this was not usury.

In the securities given for the loan was included the amount of a former loan. The only usury alleged was the charge and allowance of said item

of expense.   The facts in relation to the former loan were proved, but there was no finding, or request to find, that the agreement therefor was usurious.   *Held*, that the question could not be raised here.

Defendant T., in pursuance of an arrangement with plaintiff, bought in on a foreclosure sale certain real estate consisting of a manufactory and vacant lots adjoining, which had been mortgaged by the latter.   There was at the time upon the premises certain 'machinery, tools, etc., purchased by plaintiff with funds advanced by T., under an agreement that he was to have a lien on all the property so purchased.   At the time of taking the referee's deed on the foreclosure sale, T. also took from plaintiff a bill of sale of the personal property, and executed to plaintiff a lease thereof and of the real estate, which contained a clause authorizing T. or any person, by his order, to enter upon the vacant lots and build upon and improve them.   T. covenanted to sell the property to plaintiff upon terms stated, the covenant, however, to be void if any rent, taxes or assessments should remain in arrears for thirty days.   Certain payments being in arrear, T., after notice to plaintiff, sold the property at public auction to defendant S., who purchased with notice of plaintiff's claims.   Thereafter, the lease was surrendered and plaintiff took a lease of the first floor and basement of the building. G. and F., under a contract with S., erected buildings on the vacant lots and put upper stories on the old building ; they did the work free from any control from defendants; the latter employed M. to superintend the work and gave instructions to the contractors.   Plaintiff made no objections to the buildings and alterations, only objecting to the manner in which the work was done.   It was so unskillfully and negligently done that plaintiff's place of business was flooded by storms, etc.   The referee, however, found that this was without the fault and against the wishes and advice of defendants.   *Held*, that defendants were not liable for the damages.

In the progress of the improvements, it became necessary to remove certain of the machinery, tools, etc., which were described in the lease ; this was done without objection on the part of plaintiff, and the property was stored.   *Held*, that defendants were not liable by reason of the removal.

Certain of the property removed was purchased with funds furnished by T., but was not included in the bill of sale.   The list therefor was furnished by plaintiff and the referee found that T. was not aware, at the time of the removal, that it was not included.   *Held*, that defendants were not liable for such removal.

(Argued June 18, 1881 ; decided October 4, 1881.)

Appeal from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon

an order made May 24, 1879, affirming a judgment in favor of defendants, entered upon the report of a referee.

Two actions were originally brought by plaintiff against defendants, one to have a deed to defendant Thurber declared to be a mortgage and void on the ground of usury, the other to recover damages for injury to plaintiff's property and business, alleged to have been caused by defendants' negligence, also for trespass in taking and carrying away chattels and in unlawfully entering upon plaintiff's premises.

The two actions were consolidated and tried as one.

The facts are sufficiently set forth in the opinion.

*Roger A. Pryor* for appellant. The conveyance by Abel Crook, as affects the interests of Morton, was a mortgage and not a conditional sale. (*Carr* v. *Carr*, 52 N. Y. 251; *Tibbs* v. *Morris*, 44 Barb. 138; *Fielder* v. *Darrin*, 50 N. Y. 437; *Bowery Bank* v. *Duncan*, 12 Hun, 405; *Pardee* v. *Treat*, 18 id. 298; Thomas on Mortgages, 20; Story's Eq., § 1018; *Holmes* v. *Grant*, 8 Paige, 243, 257; *Horn* v. *Keteltas*, 46 N. Y. 605; *Stoddard* v. *Whiting*, id. 627; *Conway's Executors* v. *Alexander*, 7 Cranch, 627.) The letter preliminary to the deed shows that it was intended as a security. (*Howard* v. *Harris*, 2 White & Tudor's L. Cas. [Am. ed.] 1986.) Great inadequacy of price is always a strong circumstance in favor of the supposition that a sale of the property was not intended. (*Robinson* v. *Cropsey*, 6 Paige, 480.) Where a grantee takes advantage of the necessitous circumstances of the grantor, and, in doubtful cases, retainer of the possession by grantor is a circumstance of much weight in favor of treating the conveyance as a security. (*Howard* v. *Harris*, 2 W. & T. 1989; *Wing* v. *Cooper*, 37 Vt. 179.) The intention of the parties is controlling upon the question whether the deed was a security for the repayment of money or a conditional sale. (*Matthews* v. *Sheehan*, 69 N. Y. 585; *Horn* v. *Keteltas*, 46 id. 605; *Murray* v. *Walker*, 31 id. 399; *Odell* v. *Montrose*, 68 id. 499.) Parol evidence is admissible to show the intent. (*Horn* v. *Keteltas*, 46 N. Y. 605; *Hodges* v. *The Tennessee M. & F. Ins.*

*Co.*, 8 id. 416 ; *Chester* v. *The Bank of Kingston*, 16 id. 336 ; *Vanduser* v. *Worrall*, 3 Keyes, 311.) The want of an obligation to pay is not necessary to constitute the deed a mortgage. (*Morris* v. *Budlong*, 78 N. Y. 543 ; *Brown* v. *Dewey*, 2 Barb. 28 ; *Horn* v. *Keteltas*, 46 N. Y. 605 ; *Matthews* v. *Sheehan*, 69 id. 585.) The principle is the same, whether real or personal property be in question. (*Parks* v. *Hall*, 2 Barb. 206 ; *Despard* v. *Walbridge*, 15 N. Y. 374; *Jackson* v. *Strong*, 1 Hall, 1 ; *Weber* v. *Sampson*, 6 Duer, 358.) Once a mortgage always a mortgage does not cease to be applicable on the execution of the instrument, and will, invalidate a subsequent agreement tending to preclude the exercise of the right of redemption. (*Henry* v. *Davis*, 7 Johns. Ch. 40 ; *Clark* v. *Henry*, 2 Cow. 324 ; *Wright* v. *Bates*, 13 Vt. 341 ; *Dougherty* v. *Colgan*, 6 Gill & John. 275 ; *Mills* v. *Mills*, 26 Conn. 213 ; *Vanderhaise* v. *Hugues*, 2 Beasley, 244.) The burden is on the mortgagee to show that a sale or release of the mortgagor's equity was made deliberately and for an adequate consideration. (*Dougherty* v. *Colgan*, 6 Gill & Johns, 275 ; *Mills* v. *Mills*, 26 Conn. 213 ; *Perkins* v. *Day*, 3 Dana, 174 ; *Hyndman* v. *Hyndman*, 19 Vt. 9 ; *Locke* v. *Palmer*, 26 Ala. 312, 323 ; *Brown* v. *Gaffney*, 28 Ill. 150 ; *Boughn* v. *Merryman*, 32 Md. 185 ; *Villa* v. *Rodriguez*, 12 Wall. 323 ; *Howard* v. *Harris*, 2 W. & T. L. Cas. [Am. ed.] 1989.) The right of Morton could not be foreclosed, save by the judgment of a court. (Thomas on Mortgages, 20 ; Broom's Maxims, 108 ; *Howard* v. *Harris*, 2 W. & T. 1949–1954.) The mortgage was usurious. (*Fiedler* v. *Darrin*, 50 N. Y. 437 ; *Birdsall* v. *Patterson*, 51 id. 43 ; *Browne* v. *Vredenburg*, 43 id. 195 ; *Knickerbocker L. Ins. Co.* v. *Nelson*, 78 id. 137 ; *Clark* v. *Sheehan*, 47 id. 194 ; *Brown* v. *Brinkerhoff*, 3 Alb. L. J. 16 ; *Quackenboss* v. *Sayer*, 62 N. Y. 344 ; *Sweet* v. *Spencer*, 33 Barb. 44 ; *Crane* v. *Hubbel*, 7 Paige, 413 ; *Juliard* v. *Grant*, 4 Alb. L. J. 318 ; *Williams* v. *Hawes*, 7 Paige, 581.) A mortgage is void if a part of the consideration for it be a prior usurious security ; it is entirely void. (*Cope* v. *Alden*, 41 N. Y. 303 ; *Baldwin* v. *Palmer*, 10 id. 232 ; *Rose* v. *Truax*, 21

Barb. 361 ; *McCrary* v. *Cope*, 46 id. 272 ; *Scott* v. *Gilmore*, 3 Taunt. 226 ; *Jackson* v. *Packard*, 6 Wend. 415 ; *Barton* v. *Plank R. Co.*, 17 Barb. 397.) An objection, that a pleading is insufficient in substance, is available, even though the evidence be sufficient, provided the party properly makes the point when the evidence is offered. (CHURCH, Ch. J., in *Rector* v. *Clark*, 78 N. Y. 21–28.) All who aid, countenance or advise the commission of a tort, or who are present and approve, are liable, if it was committed for their benefit. (*Smith* v. *Felt*, 50 Barb. 612 ; *S. C.* affirmed, 51 N. Y. 642 ; *Judson* v. *Cook*, 11 Barb. 642.)

*E. More* for respondents. The effect of the arrangement of March 4, 1871, was a conditional sale and not a mortgage. (*Hill* v. *Grant*, 46 N. Y. 499 ; *Holmes* v. *Grant*, 8 Paige, 243.) If Thurber took the title by way of security, there can be no question that the effect of the arrangement was to make him a mortgagee in possession. The only relief a mortgagor out of possession has is the right to redeem. (*Parish* v. *Wheeler*, 22 N. Y. 494 ; *Chase* v. *Peck*, 21 id. 581 ; *Phyfe* v. *Reilly*, 15 Wend. 248 ; 32 Barb. 241, 389 ; 2 Robt. 642 ; *Sahlor* v. *Signor*, 44 Barb. 606.) The only way the payment of the $1,000 for the $35,000 loan would affect Thurber would be to reduce the amount due him on redemption by just that amount, and the $70 rent per year. (*Patterson* v. *Birdsall*, 51 N. Y. 143 ; 64 id. 294.) If the bill of sale and lease can be read so as to leave any thing out, they will be treated, for the purpose of determining the rights of these parties, as if nothing had been left out. (*Hoppough* v. *Strubble*, 60 N. Y. 430 ; *Dobson* v. *Pearce*, 12 id. 166, 168 ; *Crary* v. *Goodman*, 12 id. 266 ; *Foote* v. *Sprague*, 12 How. Pr. 358 ; *Hinman* v. *Judson*, 13 Barb. 629 ; *Hicksville R. R. Co.* v. *L. I. R. R. Co.*, 48 id. 355 ; *Clyth* v. *La Fountain*, 51 Barb. 186.) If the builders did Morton any unnecessary injury, it is too late in the day to claim that either Smith or Thurber is liable therefor. (*King* v. *N. Y. C. & H. R. R. R. Co.*, 66 N. Y. 181 ; *Overton* v. *Freeman*, 11 C. B. [73 Eng. Com. L.] 867 ; *Rapson* v. *Cubitt*, 9

M. & W. 710; *Kelly* v. *Mayor of N. Y.*, 11 N. Y. 432; *Peck* v. *Same*, 8 id. 222; *Blake* v. *Ferris*, 5 id. 48; *Blackwell* v. *Wiswall*, 24 Barb. 356; *Gourdier* v. *Cormack*, 2 E. D. Smith, 254; *Potter* v. *Seymour*, 4 Bosw. 148; *Slater* v. *Mersereau*, 64 N. Y. 145; *Walter* v. *Bennett*, 16 id. 250.) One cannot recover on contract where his action is in tort. (*Degraw* v. *Elmore*, 50 N. Y. 45; *Belknap* v. *Seeley*, 14 id. 147.) An action for equitable relief cannot be changed into ejectment. (74 N. Y. 442.) Or fraud into breach of contract. (*Boss* v. *Mathie*, 51 N. Y. 108.) As plaintiff did not move to amend to meet the variance between the proof and the pleadings the judgment must be affirmed, even if the court could have granted an amendment. (*Tooker* v. *Arnoux*, 76 N. Y. 397.)

RAPALLO, J. In the first of these cases the only claim made on the present appeal is that the deed and bill of sale to the defendant Thurber should be declared to be mortgages merely, and to be void for usury. No relief by way of redemption is demanded, nor is the ready offer to pay the mortgage debt.

Assuming that the instruments in question were taken by the defendant Thurber as security merely and are to be treated as mortgages, we are of opinion that the plaintiff has failed to make out a case of usury.

The facts upon which the charge is predicated are, as found by the referee, substantially as follows: The plaintiff was the lessee of certain premises in the city of Brooklyn, where he carried on a bakery, and had made improvements thereon to the amount of about $28,000. The property was about being sold under mortgage foreclosures, which would have cut off the plaintiff's interest therein. The defendant Thurber undertook to advance the funds necessary to buy in the property; to take the title thereto in his own name, and also to take a bill of sale of the machinery on the premises, and lease the whole to the plaintiff at a rent equal to the interest on his advances, and to convey the property, real and personal, to the plaintiff on payment within five years of an amount equal to

the sum advanced for the purchase of the property, and a balance due Thurber from plaintiff on another account, for machinery, etc., with interest. Thurber bought in the property at the foreclosure sale, and paid for the same $35,000 in cash and a mortgage of $12,000 ; the balance due from plaintiff to Thurber on the machinery account was $20,000, making in all $67,000. But in the lease which Thurber executed to the plaintiff the amount to be paid by the plaintiff to redeem the property was fixed at $68,000, and the rent reserved was the interest on that sum, besides taxes, etc. The $1,000 difference is alleged to constitute usury. The referee finds that the plaintiff did not agree to pay this sum to Thurber for the loan of his money, but that he assented to its allowance under the belief that it was an expense incurred by Thurber, and on his representation that he had to pay that sum to procure a mortgage loan of the $35,000 payable on the purchase of the property. In fact Thurber did not incur that expense. He arranged with the defendant Smith to borrow of him $35,000 on mortgage on the property, but this arrangement was subject to the condition that if Smith should need the money for another purchase for which he was at the time negotiating, the loan was to be returned. Smith did make the other purchase, and Thurber returned him the $35,000, never having paid the $1,000 in question. There was no agreement between the parties which authorized Thurber to charge the plaintiff with the $1,000 under these circumstances. If he had collected this $1,000 from the plaintiff, suppressing the fact that he had not paid it, it would have been a clear fraud upon the plaintiff, but would not have constituted usury. To constitute usury it must be shown that the additional interest is paid or retained in pursuance of a mutual agreement between the parties. (*Guggenheimer* v. *Geiszler*, 81 N. Y. 293.)

On the argument in this court, the transaction is claimed to be usurious on the further ground that the $20,000 of indebtedness included in Thurber's lien on the property consisted in part of advances made by him under an agreement dated October 6, 1870, whereby H. K. Thurber & Co. agreed to ad-

vance to the plaintiff $5,000, at seven per cent interest, for three years, for the purpose of buying machinery and ovens to manufacture fancy London biscuit. This agreement stated that as an inducement to Thurber & Co. to loan said money, the plaintiff agreed that they should be the sole agents in New York city of the product of such machinery and ovens, and should have, over and above the greatest discount given to any other person or firm, a further discount of five per cent; meaning that they should have the goods sold by them five per cent lower than any other person or firm. It is now claimed that this agreement was usurious, and that its vice infects the entire security held by the defendants.

No such claim appears to have been made on the trial or in the court below. The complaint was twice amended, and avers that the charge of $1,000 was usurious, but makes no such charge in respect to the agreement of October 6. This agreement was properly and necessarily put in evidence as a part of the history of the transactions between the parties, but although there were over forty requests on the part of the plaintiff, there is no finding or request to find, either as matter of fact or law, that this agreement was usurious. It is too late now to raise the point for the first time, and we will not, therefore, discuss it. We conclude that the complaint in the first action was properly dismissed.

The second action is of a different character, and is in the nature of an action of trespass for taking and carrying away chattels of the plaintiff, and for damages for wrongfully entering upon his premises, cutting down his chimneys, building an additional story on the building occupied by him as a bakery, erecting a building upon a vacant lot adjoining, and so negligently carrying on such building operations as to injure his business and his stock and utensils, and cause his store and bakery to be flooded by rain water, etc.

It appears that the defendant Thurber, in pursuance of his arrangement with the plaintiff to buy in the property, took a deed thereof from the referee on the foreclosure sale, on the 4th of March, 1871. The property consisted of a building on

the south-easterly corner of Elm place and Fulton street in the city of Brooklyn, which the plaintiff had for several years occupied as a bakery, and three vacant lots adjoining, on the southerly side of Fulton street. The plaintiff had on said premises a large amount of machinery, ovens, etc., including those which had been purchased with the funds of the defendant Thurber, advanced for the purpose, under the agreement of October 6, 1870. By this agreement Thurber was to have a lien on all machinery purchased with his advances. At the time of taking the referee's deed (March 4, 1871), Thurber also took a bill of sale from the plaintiff, of the machinery, etc., on the premises, and all the tools then in use in the bakery. He, on the same day, executed a lease to the plaintiff of the real estate, and the fixtures and machinery thereon, which contained a clause that the plaintiff would permit Thurber, or any person by his order, to enter upon the three vacant lots and build upon or improve them as he might at any time desire. This lease also provided that the covenant therein contained to sell the property to the plaintiff should be void and of no effect if any payment for rent, taxes, assessments, etc., should remain in arrear for thirty days.

The plaintiff continued to occupy the premises under this lease until March, 1874, when, payments of taxes and rent being in arrear to a considerable amount, the defendant Thurber, after some correspondence, in which he complained of the default, and urged the necessity of selling the property to make himself whole, without delay, finally, on the 30th of March, 1874, wrote to the plaintiff that he had decided to advertise the property, machinery, etc., for sale at auction, and that any amount it should bring, after paying him back his money and interest, he should hand over to the plaintiff.

On the 6th of April, 1874, Thurber notified the plaintiff that he had advertised the property for sale. One week from that day, and on the 13th of April, notwithstanding plaintiff's protest, the property was sold at auction to the defendant Smith; and on the 14th of April, 1874, Thurber conveyed the

property to Smith by deed of that date. It is found that Smith purchased with notice of the plaintiff's claims.

It is also found that after this sale the lease of March 4, 1871, was surrendered, and the plaintiff took a parol lease of the first floor and basement of the before-mentioned building then on the premises, and that he had ever since been in the occupation of that part of the premises.

The referee further found, on the defendant's request, that on the 17th of June, 1874, the defendant Smith contracted with Grissler & Fausel, builders, to erect buildings on the vacant lots, and to put upper stories on those already built; that they made the alterations and erected the buildings called for in the contract, free from any control of the defendants or either of them; that the plaintiff made no objection to the building and alterations, only to the way and manner in which they were made, as unnecessarily and carelessly injuring his business, and that if any unnecessary and avoidable injury was done to the plaintiff in and about the buildings and alterations, it was without the fault and against the wishes and advice of the defendants.

At the request of the plaintiff the referee found that the defendants employed one Murray to superintend the building operations of said contractors, and personally, at different times, interfered and gave instructions to the contractors and workmen, and that said operations were so unskillfully and negligently conducted that plaintiff was subjected to a nuisance of dust, rain and exposure, his place of business was flooded by the equinoctial storms, so that his family trade was reduced to the extent of $100 per week on bread, from the middle of August to the month of January, four and a half months, amounting to $2,000.

These are all the facts found in respect to damages from the building operations. The referee found, as a conclusion of law, that the plaintiff was not entitled to recover of the defendants, or either of them, for any injury done him by the builders in the course of the erections or alterations. The only point made by the appellant in this branch of the case is that

the rule that the owner of premises is not liable for the negligent conduct of a contractor is not applicable, for the reason that the defendants in person directed portions of the work; but the finding in this respect does not disclose the nature of these directions, or that they had any connection with the injuries sustained by the plaintiff; on the contrary, the referee found that these were inflicted without the fault and against the wishes and advice of the defendants.

The remaining claim relates to the asportation of machinery, etc. The findings on this subject are, that the defendants, by their agents in their employment, at divers times between the 16th of August, 1874, and the 7th of September, 1874, without the consent of the plaintiff, took and carried away from the premises certain machinery, tools, fixtures and chattels, which are described in the lease and in a schedule annexed to the findings. It appears that in the progress of the building and alterations it became necessary to remove some of the machinery, and the referee finds that the personal property, machinery and fixtures removed from the premises surrendered by the plaintiff, were removed without objection on his part, and were stored where they still remain, except such as have been sold, and that the only articles sold, upon which the plaintiff claims that Thurber had no lien, are six cutters, which were ordered before March 4, 1871, but delivered afterward and paid for by Thurber, and that under the agreement of October 6, 1870, he had a lien thereon. They were sold for $150, the highest price that could be obtained therefor. As to the claim of the plaintiff, that machinery was removed by Thurber which was not included in the bill of sale of March 4, 1871, the referee finds that it was on and prior to that date agreed, in consideration of defendant Thurber advancing the necessary funds to complete the purchase, that all the machinery, tools, fixtures and personal property connected with the bakery business should be transferred to Thurber; that he was not aware at that time that any portion of it was not included, and that the plaintiff furnished the list, which should have included all. There is much confusion in the findings in regard to this machinery,

but they fail to show that the referee erred in his conclusion that the defendants had a right to remove the things that were removed, and were not liable to the plaintiff by reason of such removal.

The judgments in both actions should be affirmed, with costs.

All concur.

Judgments affirmed.